J-A07032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORTNEY PAIGE MYERS | : | |
| | : | |
| Appellant | : | No. 1116 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 18, 2023
In the Court of Common Pleas of Adams County
Criminal Division at No: CP-01-CR-0001039-2022

BEFORE: STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY STABILE, J.: **FILED DECEMBER 17, 2024**

I respectfully dissent as I do not believe the Commonwealth proved beyond a reasonable doubt that Appellant had actual knowledge of circumstances that unnecessarily exposed the child to a danger or threat of harm to support the crime of endangering the welfare of a child. I therefore would vacate that conviction.

"A parent or guardian . . . supervising the welfare of a child under 18 years of age . . . commits an offense [EWOC] if he **knowingly** endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1) (emphasis added). An essential element of EWOC is that a defendant had actual knowledge of circumstances that unnecessarily exposed a child to danger and/or a threat of harm. There is no dispute that

_____

[*] Former Justice specially assigned to the Superior Court.

the other elements of EWOC have been met – the child was under the age of 18 and in Appellant's custody. However, the evidence is wholly lacking to support a finding that Appellant knew fentanyl was in the home and that the child could have been exposed to fentanyl.

Appellant argues that "[n]o evidence was presented at trial that [Appellant] was the source, knew of the source or put the child in a position that violated a duty of care to the child." Appellant's Brief at 10. I agree.

A person acts "knowingly" with respect to a material element of an offense:

> (i) if the element involves the nature of his [or her] conduct or the attendant circumstances, he [or she] is aware that his [or her] conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his [or her] conduct, he [or she] is aware that it is practically certain that his [or her] conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2). "The 'knowing' element of the crime applies to the general issue of whether the defendant knew that he [or she] was endangering the child's welfare, not whether the defendant knew that he [or she] would cause any particular result." **Commonwealth v. Smith**, 956 A.2d 1029, 1038 (Pa. Super. 2008), *appeal denied*, 989 A.2d 917 (Pa. 2010). What is lacking here is proof that Appellant "knowingly" endangered the child, or as further defined, was aware her conduct would endanger the child, or was practically certain her conduct would cause the child harm.

The Majority finds under the totality of circumstances that "there was sufficient evidence to allow the jury to reasonably conclude that Appellant knew that her infant daughter, E.W., had been exposed to circumstances that threatened her physical welfare." Majority Opinion at 12. The Majority appears to rely upon 404(b) evidence to prove the knowing element of EWOC:

> Given that Appellant had **experienced the past trauma** of her older daughter's exposure to fentanyl in 2020, it was reasonable to infer that Appellant **appreciated the danger of having a drug** as potent as fentanyl **in her home within the vicinity** of a child. While Appellant suggested she has absolutely no knowledge of how her younger daughter, E.W., was exposed to fentanyl twenty months later, the jury was free to find that the **circumstantial evidence** presented showed that **Appellant knew there was a dangerous drug in her home which E.W. could access**.
>
> * * * *
>
> it was also reasonable for the jury to conclude that **Appellant failed to take effective actions** to protect E.W.'s welfare. The tragic history of H.W.'s fentanyl poisoning **should have compelled Appellant to take significant action** to protect E.W. from circumstances that presented a reasonably imminent threat of death.

Majority Opinion at 12-13 (emphases added).

None of what the Majority points to as support for the knowing element of EWOC proves: (1) that fentanyl was in the home on June 3, 2022; (2) that Appellant was aware fentanyl was in the home; and (3) that Appellant was aware that the child could encounter fentanyl. It is undisputed that there was no criminal investigation done in this matter at or around the time of this incident. Appellant consistently informed law enforcement that she did not know what happened to the child. The child was playing on the kitchen floor

- 3 -

near a pantry and when Appellant picked the child up, she noticed the child was having trouble breathing. N.T., Trial 2/8/23, at 48. Several hours later, Officer Mulder was notified by Dauphin County Children and Youth Services ("CYS") that it was potentially a criminal matter because the child had fentanyl in her system. *Id.* at 58-59.

Despite this information, Appellant's home was not secured or searched, no items were removed from the pantry and tested[1], and no witnesses were interviewed. *Id.* at 54-55. Law enforcement did not ask whether anyone else was present in the home at the time of the incident or whether the child was with anyone else earlier in the day or the night before. *Id.* at 55. Appellant's clothing was not taken into evidence and tested for traces of fentanyl. *Id.* Moreover, Appellant was on probation and actively drug tested at the time of the incident. *Id.* at 117. Appellant submitted ten drug tests between February and July 2022, all of which were negative. *Id.* at 121. Significantly, Appellant provided a negative drug test to CYS on the day of the incident. *Id.* at 73-75.

The fact that another child was previously exposed to fentanyl and that Appellant is aware of the danger of fentanyl does not prove that on June 3, 2022: (1) there was fentanyl in Appellant's home; (2) that Appellant knew that fentanyl was in the home; and (3) that Appellant knew that the child

---

[1] Appellant informed emergency responders that the child was playing near a jar of peanut butter and soap in the pantry immediately prior to noticing the child was in distress. N.T., Trial 2/8/23, at 31, 44.

could encounter it. The Majority improperly uses 404(b) evidence to show Appellant's propensity to commit EWOC. **See Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa. Super. 2015), *appeal denied*, 128 A.3d 220 (Pa. 2015) ("Evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes"). Without proof of fentanyl being in the home and that Appellant was aware of it being in the home, the Commonwealth could not sustain its burden to prove the element of knowing beyond a reasonable doubt. Therefore, I find that there was insufficient evidence to sustain the EWOC conviction.[2]

Appellant also contends that the trial court improperly admitted the 404(b) evidence to show absence of *mistake or accident* to permit the Commonwealth to use the evidence to show Appellant's propensity to commit EWOC. **See** Appellant's Brief at 13-16. "Appellant is unable to discern what act is alleged to have not been a mistake, what act is alleged not have been an accident, and there was no evidence that Appellant acted knowingly or intentionally in relation to the alleged crime." Appellant's Brief at 15. I agree.

The Commonwealth sought to introduce evidence of Appellant's prior EWOC conviction to show absence of mistake or accident. **See** Commonwealth's Motion, 9/6/22. "Evidence of a prior crime may also be

---

[2] Appellant also challenges the weight of the evidence. **See** Appellant's Brief at 11-12. Based on my disposition of the sufficiency claim, I would find no need to address the weight of the evidence claim. **See Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000) (a challenge to the weight of the evidence concedes there is sufficient evidence to sustain the verdict).

admitted to show a defendant's actions were not the result of a mistake or accident, where the manner and circumstances of [the] two crimes are remarkably similar." *Tyson*, 119 A.3d at 359 (quotation marks and citations omitted).

The Majority agrees with the trial court that the evidence was admissible to "challenge Appellant's suggestion that E.W. mistakenly or accidentally came into contact with fentanyl while in Appellant's exclusive care through no fault of Appellant." Majority Opinion at 17. The Majority also finds the evidence was "highly relevant to show that Appellant had knowledge of the danger that her younger infant daughter, E.W., could access a highly dangerous controlled substance in her home." *Id.* at 18.

The focus for admissibility purposes is not whether the *child* mistakenly or accidently encountered fentanyl. The focus is on whether the evidence is admissible to rebut a claim by a defendant that the child's harm was caused by a mistake or accident. Appellant never argued that child was harmed due to mistake or accident. She consistently stated that she had no idea how it occurred. It therefore follows, that if Appellant had no knowledge of the fentanyl's presence, she could not claim that the exposure was due to an accident or mistake.

I agree that the basic circumstances of the two incidents are substantially similar – an infant in respiratory distress due to fentanyl poisoning. However, that is where the similarities end. In 2020, Appellant was on a methadone maintenance program, admitted there were drugs in the

home and conceded that she could have had fentanyl on her person that transferred to the child. In the instant case, Appellant denied that there were drugs in the home or that she had knowledge of what could have caused the child to go into respiratory distress. Therefore, I agree with Appellant that the trial court improperly admitted the 404(b) evidence and permitted the Commonwealth to utilize it to show Appellant's propensity to commit EWOC. Respectfully, I conclude that the Majority's finding that "[g]iven Appellant's culpability in the prior circumstances . . . such facts support an inference that Appellant was aware that this danger existed in her home at the time that E.W. accessed fentanyl and required life-saving medical care", *id.* at 18, is in error as the evidence constitutes pure propensity evidence.

Lastly, Appellant contends that the trial court improperly excluded testimony from her probation officer and CYS caseworker. Appellant's Brief at 16. She sought to introduce their testimony to show that she was compliant with her probation conditions, passed all drug tests, did not appear to be using controlled substances, and her home was clean. *Id.* at 16-17. The Majority improperly characterizes this testimony as "character evidence." Majority Opinion at 19-20.

While I agree with the Majority that character evidence is "limited to testimony regarding a defendant's general reputation in the community for a particular trait," Appellant did not propose to introduce this testimony as character evidence. Rather, the evidence was proffered to "rebut the prior

acts evidence" and "provide factual evidence regarding her home," which are "directly relevant to the elements of [EWOC]." Appellant's Brief at 18.

Generally, evidence is admissible if it is relevant. Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a)(1).

Here, the Commonwealth sought to preclude the testimony of Appellant's probation officer and CYS caseworker because it was not relevant. *See* Commonwealth's Motion in Limine, 12/29/22. Initially, the trial court denied the Commonwealth's motion, stating that it would decide if the testimony was relevant at trial after an offer of proof. *See* Order, 1/3/23. At trial, the Commonwealth presented significant testimony regarding the past incident with Appellant's other child to prove that fentanyl was in the home on June 3, 2022. When Appellant sought to introduce the testimony of her probation officer and CYS caseworker, the trial court sustained the Commonwealth's objection, finding the testimony was not relevant. N.T., Trial, at 119. The trial court did not characterize the testimony as "inadmissible character evidence" until its 1925(a) opinion. *See* Trial Court Opinion, 9/12/23, at 16-17.

I agree with Appellant that "[t]he fact that Appellant was compliant with probation and CYS, passed her drug screening, kept a clean home, and did not violate her house arrest . . . and did not appear to be using drugs certainly make it less probable that she endangered her child." Appellant's Brief at 17. The testimony was not sought to show Appellant's character for truthfulness or that she acted in a certain way on June 3, 2022. It was sought to rebut the elements of the crime. Moreover, the witnesses were not typical character witnesses. They were a probation officer and CYS caseworker, both of whom are trained in and employed to detect substance abuse issues and to assess dangers in the home. Therefore, I find the testimony was relevant because it had a tendency to refute the fact that Appellant was aware that fentanyl was in the home.

I therefore, respectfully dissent and would vacate Appellant's EWOC conviction.